**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory V. BROWN, Defendant–Appellant.**

No. 95–1030.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 7, 1995.

Decided March 29, 1996.

Karine Moreno-Taxman (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff-Appellee.

Erich C. Straub (argued), Milwaukee, WI, for Defendant-Appellant.

Before RIPPLE, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Gregory Brown was convicted of three federal offenses stemming from two separate incidents where he illegally possessed a firearm. On appeal he challenges all three convictions on the ground that he was denied his right to choice of counsel as guaranteed by the Sixth Amendment. He also attacks his conviction on the third offense alleging that his arrest and the seizure of incriminating evidence violated his Fourth Amendment rights. We find no Sixth Amendment infringement, but remand for an additional finding on the Fourth Amendment question.

## I. Background

At about 10:30 p.m. on November 24, 1993, Milwaukee Police Officers Rebecca Pixley and Curtis Rueda were dispatched to investigate a complaint of prowlers at 3259 North 48th Street, a high-crime area in Milwaukee. An agitated woman met them at the scene and described the prowlers as two black males about twenty-five years old, one approximately 5 feet 7 inches tall, stocky, and wearing an Army jacket, a hood, and dark clothing, and the other about the same height, thin, and wearing a black knit skull cap, black jacket, and black pants.

Meanwhile just down the street, Officers Joseph Erwin and Jesse Benitez were driving south on 48th Street with their headlights off when they noticed a black male in dark clothing sitting in the front passenger seat of a maroon station wagon parked north-bound at 3236 North 48th Street. A second black male in dark clothing (defendant Brown as it turned out) walked from the south side yard of that address, entered and started the station wagon, and drove away northbound at a normal speed with the headlights on. The officers immediately turned their squad car around and joined Officers Pixley and Rueda at the scene where they obtained a quick description of the alleged prowlers. Believing the profile matched the two men they had just observed driving away, Officers Erwin and Benitez caught up with and stopped Brown and his passenger about six blocks away. There is no indication that Brown was speeding or ever attempted to flee.

Concerned with what he might encounter, Officer Erwin yelled to Brown to shut off the car, step out, and come back to the squad car. Brown complied and Officer Erwin immediately handcuffed him, patted him down, and placed him in the squad car. While this was occurring, Officer Benitez had the passenger, Ronald Jones, step out of the car for questioning. As a safety precaution, Officer Benitez then scanned the vehicle with his flashlight for weapons. Under direct examination at an evidentiary hearing, Officer Benitez testified to what followed:

Q. And when you did that, did you observe anything?

A. Yes, I did. I seen—I observed a black bag.

Q. Was there anything about that black bag that drew your attention?

A. Yes.

Q. What was that?

A. It was partially open. Inside the black bag was a shiny chrome object, it looked like to be metal of some kind.

Q. And did you have your flashlight on this object?

A. Correct.

Q. What did you do upon seeing the shiny chrome object?

A. I thought it to be a weapon so I took another-moved in closely and took another look at it and opened the bag a little bit farther up to see what was in that, what kind of object, shiny object it was.

Q. And what did you see?

A. I seen a very large handgun.

The black bag also contained a second handgun, ammunition, handcuffs, a black knit mask, and a scanner. Officer Benitez then handcuffed Jones, placed him under arrest and put him in another squad car that had just pulled up. Officers Pixley and Rueda arrived soon thereafter. Officer Pixley testified that all these events took no more than ten minutes.

A few months later, on April 6, 1994, at approximately 4:50 a.m., Officer Andrew Jones and his partner were on a routine patrol when they observed a defective taillight on a speeding van driven by Brown (who presumably was out on bail). When Officer Jones activated his lights and siren, Brown accelerated and tried to escape, running a number of flashing red lights and a stop sign in the process. Eventually, Brown crashed the van into a fence and fled on foot with the officers, now also on foot, in pursuit. In the process of the chase which lasted for about three blocks, Brown discarded several incriminating items. First he dropped a .380 semi-automatic pistol and a gun magazine, then a pair of binoculars and a black ski mask, then black garbage bags, plastic ties, a black roll of wire, and some tape. When he was finally apprehended he still had a police scanner tuned to the channel of the police district in which the chase had occurred (so he apparently heard reports of his own chase). Other items found on him and later in the van included a pager, glasses, keys, a black bag, three dark-colored ski masks or caps, and an additional scanner also tuned to police channels.

On May 10, 1994, a grand jury indicted Brown on one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and on a second count of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The indictment was for only the more recent events of April 6, 1994. Brown appeared for arraignment on May 20, 1994, where he pleaded not guilty. On May 24, 1994, the court appointed David E. Lowe as Brown's counsel.

On June 1, 1994, Brown filed a motion to suppress certain statements and evidence. After a hearing, Magistrate Judge Patricia J. Gorence recommended to the district judge that the motion be denied. Brown filed objections to the magistrate's recommendation on July 11, 1994. However, before the district judge could rule on Brown's motion, the government filed a superseding indictment for an additional count of being a felon in possession of a firearm based on the prowler incident of November 24, 1993. Trial on all three counts was set for September 19, 1994.

Tensions arose between Brown and attorney Lowe, and on July 19, 1994, Brown wrote the court requesting new counsel. In his letter and at a hearing on July 22, Brown stated several complaints, including unauthorized plea negotiations, failure to contact and call to testify certain witnesses, lack of vigor, not clearly explaining the charges, and not challenging his confinement in a detention unit housing prisoners he had informed on. The hearing testimony caused Lowe to demand in open court that Brown "stop lying." Lowe then denied the various allegations of improper representation, but he did agree that the relationship "can't be repaired" and that it would be quite difficult for him to continue as Brown's attorney. Although he wanted to withdraw, Lowe stated he would first timely file all pretrial motions. Because the trial was two months away, Lowe thought a new lawyer could properly take over the case.

Notwithstanding the obvious discord between Brown and Lowe, the magistrate denied the request. While she was troubled by the inadequate communication, she nevertheless noted the advantage of having an attorney who had already conducted an evidentiary hearing and cross-examined witnesses continue to trial. She concluded that the conflict had not degenerated to the point of a total lack of communication preventing an adequate defense. Significantly, however, she also said that if the "situation should change, you can certainly come back to the Court." These conclusions were restated in a subsequent written order which specifically indicated that under 28 U.S.C. § 636(b)(1)(A) and Local Rule 13.02 (E.D.Wis.), a "written appeal" from the order had to be filed with the district judge within ten days. No such "appeal"[1] was taken and Brown did not request substitute counsel again until after his conviction.

Later, Brown filed motions to dismiss and suppress evidence gathered during the November 24 incident on Fourth Amendment grounds and to strike portions of the indictment for surplusage. In a written memorandum, the magistrate issued recommendations that the motion to dismiss and suppress be denied, but granted the motion to strike. Brown then filed timely objections and later moved to dismiss all three counts for prosecutorial misconduct, but the district judge rejected his arguments and adopted the recommendations of the magistrate.

Brown subsequently was convicted on all counts and sentenced to 240 months imprisonment on each count, with the sentences to run concurrently. Brown's motion for judgment of acquittal, or in the alternative, for a new trial was subsequently denied. With new counsel, Brown appeals the convictions resulting from the November 24 incident, but he does not appeal the conviction for the April 6 incident for which he received the same concurrent sentence.

## II. Discussion

Brown contends that the magistrate abused her discretion by denying his timely motion for substitute counsel, thereby violating his Sixth Amendment right to choice of counsel and necessitating a new trial on all counts. He also maintains that in contravention of the Fourth Amendment, the police arrested him without probable cause during the stop on November 24, 1993 and improperly seized from his car items whose incriminating nature was not immediately apparent. According to Brown, this evidence should have been suppressed and the conviction on the third count must now be reversed. We consider each of these contentions in turn.

---

**1.** It is probably not technically accurate to use the term "appeal" in this context, since the district judge and the magistrate are different judicial officers of the same court. *Cf. Wilson v. O'Leary,* 895 F.2d 378, 382 (7th Cir.1990); *but* *see* 28 U.S.C. § 636(c)(4) ("the parties may further consent to *appeal* on the record [from a magistrate's ruling] to a judge of the district court") (emphasis added).

*A. Sixth Amendment Claim*

*1. Waiver.*

A preliminary matter detains us before reaching the merits of Brown's Sixth Amendment challenge. The government claims that Brown waived his right to appeal the magistrate's ruling on the motion for substitute counsel by failing to file a written appeal to the district judge within ten days as required by Local Rule 13.02 (E.D.Wis.). Brown counters that it is irrational and unjust to prejudice his right to appeal this matter on the ground that the very attorney he claimed was inadequate and thus sought to remove failed to properly preserve the issue for appeal.

Title 28 U.S.C. § 636(b)(1)(A) permits district judges to designate non-Article III magistrate judges for the determination of non-dispositive pretrial motions, such as motions for substitute counsel. *Estate of Conners v. O'Connor*, 6 F.3d 656, 658 (9th Cir.1993); *Hudson v. Nabisco Brands, Inc.*, 758 F.2d 1237, 1245 (7th Cir.1985) (Flaum, J., concurring). In contrast to dispositive issues, where the magistrate must submit for the district judge's approval proposed findings of fact and law, *see* 28 U.S.C. § 636(b)(1)(B), under § 636(b)(1)(A) the magistrate judge may rule directly on nondispositive pretrial matters. On such matters, the district judge may reconsider the magistrate's decision only "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

It is well established in this circuit, as it is in most others, that "failure to file objections

with the district judge waives the right to appeal all issues, both factual and legal." *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir.1986). However, it appears that all but one of our cases on this issue have involved the failure to object to a magistrate's recommendations to the district judge under § 636(b)(1)(B) or § 636(b)(2), as opposed to the failure to challenge a magistrate's pretrial ruling made pursuant to § 636(b)(1)(A).[2] The exception was *Ross v. United States*, 910 F.2d 1422 (7th Cir.1990), where, without acknowledging the distinction between objections to magistrate recommendations and challenges to magistrate pretrial rulings, we noted that plaintiff's failure to object to the magistrate's disqualification ruling "normally . . . would waive the issue on appeal." *Id.* at 1432 (citing *Video Views*, 797 F.2d at 539). We declined to find a waiver in *Ross*, however, on equitable grounds.[3]

■ Therefore, the issue of whether appellate review is waived by the failure to challenge before the district judge a magistrate's pretrial rulings pursuant to § 636(b)(1)(A) has never been squarely addressed in this circuit. The distinction between magistrate rulings under § 636(b)(1)(A) and those under § 636(b)(1)(B) or § 636(b)(2) is significant. Orders pursuant to § 636(b)(1)(A), which covers certain pretrial and most discovery matters, are "self-operating" and thus valid when entered, whereas those entered under § 636(b)(1)(B) or § 636(b)(2) are "non-self-operating" and thus not valid until the district judge accepts the magistrate's report and recommendation and enters an order or judgment. *United States v. Ecker*, 923 F.2d

2. *See Gometz v. Henman*, 807 F.2d 113, 114–15 (7th Cir.1986); *Lockert v. Faulkner*, 843 F.2d 1015, 1017–18 (7th Cir.1988); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 261 (7th Cir.1989); *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir.1990); *United States v. Robinson*, 30 F.3d 774, 777 (7th Cir.1994).

3. In *United States v. Reeds*, 552 F.2d 170, 171 (7th Cir.1977) (per curiam), we barred direct appeal to this court from a magistrate's finding of probable cause at a preliminary hearing on a complaint which charged defendant with attempting to manufacture phencyclidine. We noted that "[n]ot only does the available case law point in the direction of resort to the district court for any relief to which defendant may be entitled but the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A) (1976) (amending 28 U.S.C. § 636(b) (1968)), requires that any request for reconsideration of a magistrate's pretrial finding under subparagraph (A) of § 636(b)(1) . . . lies with the district court." However, these comments were issued in the context of defendant's attempt to immediately appeal a pretrial ruling and not, as here, in the context of an appeal of a conviction.

7, 8–9 (1st Cir.1991). An argument could be made (though it was not here) that unless self-operating orders are clearly erroneous or contrary to law, they are final decisions of the district court which may be appealed in due course with other issues. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the [district] court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law."). Nevertheless, our research reveals that of those few circuits that have ruled on the issue directly, most require a challenge before the district judge as a precondition to appellate review.[4]

The Supreme Court weighed in on the question of waiver for failure to file objections to a magistrate's report in *Thomas v. Arn,* 474 U.S. 140, 147, 106 S.Ct. 466, 470–71, 88 L.Ed.2d 435 (1985), but while its holding allowed the Sixth Circuit's waiver rule for matters under § 636(b)(1)(B), it did not require it. Still, the reasons the Court gave for its decision apply with equal force to pretrial magistrate rulings under § 636(b)(1)(A):

> The Sixth Circuit's rule, by precluding appellate review of any issue not contained in objections, prevents a litigant from "sandbagging" the district judge by failing to object and then appealing. Absent such a rule, any issue before the magistrate would be a proper subject for appellate review. This would either force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. Either result would be an inefficient use of judicial resources. In short, the same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court applies here.

*Id.* (internal quotation marks and citation omitted); *see also Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 261 (7th Cir.1989) (rationale of *Thomas* applies to magistrate recommendations under § 636(b)(2)). This court has expressed similar concerns:

> Such intermediate review, preferably before the initiation of trial, serves the interests of judicial economy by placing the issue before a trial judge who is more intimately familiar with the details of the case than this court could hope to become and is, therefore, in a better position initially to review the merit of the request.

*United States v. Reddick,* 620 F.2d 606, 607 (7th Cir.1980).

 For these reasons we hold that failure to challenge before a district judge a magistrate's pretrial rulings under § 636(b)(1)(A) waives the right to attack such rulings on appeal. *See Video Views,* 797 F.2d at 539. However, as our original decision in this area acknowledged, this "rule is not jurisdictional" and thus "should not be employed to defeat the 'ends of justice.' "

---

4. *See, e.g., United States v. Akinola,* 985 F.2d 1105, 1108–09 (1st Cir.1993) (appellate court is "without jurisdiction" to consider a magistrate's pretrial ruling that was not challenged before the district judge); *United Steelworkers of America v. New Jersey Zinc Company, Inc.,* 828 F.2d 1001, 1007–08 (3d Cir.1987) ("[P]arties who wish to preserve their objections to a magistrate's order entered pursuant to § 636(b)(1)(A) must file their objections in the district court within ten days as set forth in Fed.R.Civ.P. 72(a)."), *but see Henderson v. Carlson,* 812 F.2d 874, 878–79 (3d Cir.1987) (failure to object before district judge to magistrate's legal recommendations does not waive right to appellate review); *Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013, 1019 (5th Cir.1981) (failure to challenge before district judge magistrate's pretrial discovery ruling pursuant to § 636(b)(1)(A) waives challenge to ruling on appeal); *Niehaus v. Kansas Bar Association,* 793 F.2d 1159, 1164–65 (10th Cir.1986) (same). The Ninth Circuit is a possible exception as its case law has gone both ways on this point. *Compare United States Dominator v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1102–03 (9th Cir.1985) (holding that a party who fails to object to a magistrate judge's nondispositive order does *not* waive the right to appeal the order) with *McKeever v. Block,* 932 F.2d 795, 798–99 (9th Cir.1991) (holding that a party who fails to object to a magistrate judge's nondispositive order waives the right to appeal the order). It is likely that the Eighth and Eleventh Circuits also will not adopt a waiver rule for § 636(b)(1)(A) rulings since they have already rejected one for §§ 636(b)(1)(B) and 636(b)(2). *See, e.g., Taylor v. Farrier,* 910 F.2d 518, 520 (8th Cir.1990); *Lorin Corp. v. Goto & Co.,* 700 F.2d 1202, 1205 (8th Cir.1983); *United States v. Hall,* 716 F.2d 826, 828–29 (11th Cir.1983).

*Id.* at 540 quoting *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981). Equitable considerations come into play when determining whether an unchallenged pretrial ruling may yet be contested on appeal, and "under certain circumstances the failure to file objections may be excused," *Video Views,* 797 F.2d at 540, which brings us back to the case at bar.

█ The unchallenged pretrial ruling at issue here was a denial of a motion for substitute counsel. As noted, Brown argued before the magistrate that his attorney was inadequate and that they were no longer able to communicate with or trust each other. The magistrate rejected these claims and denied the motion. Under local rules, Brown was required to challenge this ruling before the district judge within ten days, which he failed to do, giving rise to the government's claim of waiver. Yet we agree with Brown that it would be inequitable to foreclose appeal of this matter because the very attorney he claimed was inadequate and with whom he allegedly could not communicate failed to preserve the issue for appeal. If Brown is correct that his attorney was incompatible, if not incompetent, then he cannot fairly be held responsible for his attorney's failure to timely object to the magistrate's ruling. To bar appellate review under this limited circumstance would "defeat the ends of justice." *Video Views,* 797 F.2d at 540. Therefore, we hold that Brown's failure to request reconsideration of the magistrate's choice of counsel ruling is excused and the issue is properly before us on appeal.

### 2. *Right to choice of counsel.*

We turn now to the merits of Brown's Sixth Amendment claim. In *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Supreme Court explained that "[t]he Sixth Amendment to the Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the Assistance of Counsel for his defence." *Id.* at 158, 108 S.Ct. at 1696 (internal quotation marks omitted). This "right was designed to assure fairness in the adversary criminal process" where "an unaided layman" might have great difficulty "arguing the law or in coping with an intricate procedural system." *Id.*; *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981); *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). In light of this, the Court has held that "the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime." *Wheat,* 486 U.S. at 158–59, 108 S.Ct. at 1697.

The Sixth Amendment right to counsel includes the right to choice of counsel. "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell,* 287 U.S. at 53, 53 S.Ct. at 58. However, this right must be understood with regard to its function in our constitutional scheme, especially where indigent defendants are concerned. "Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697 (citing *Morris v. Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983), and *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).

█ Choice of counsel rulings by the district court are reviewed on appeal for abuse of discretion. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1699–1700; *United States v. Hillsberg,* 812 F.2d 328, 333 (7th Cir.), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

In determining whether a denial of a motion for substitution of counsel constitutes an abuse of discretion, this court should consider several factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's motion, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense.

*United States v. Zillges*, 978 F.2d 369, 372 (7th Cir.1992), These factors, of course, are not exhaustive; in reviewing district court decisions affecting this important constitutional right we must not lose sight of the "presumption in favor of [a defendant's] counsel of choice." *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1699–1700.

■ There is no question that Brown's request for new counsel was timely. Brown notified the court of his desire for new counsel on July 19, 1994 and the next day Brown's attorney filed an appropriate motion requesting to withdraw as counsel. This was a full two months prior to the September 19th trial date. Like the court in *Zillges*, where the request came one month prior to trial, this does not appear to represent a tactic to manipulate or delay the trial. *See Zillges*, 978 F.2d at 372.

Next we consider the adequacy of the magistrate's inquiry. Usually the district judge (or magistrate) is required to "conduct[ ] a proper hearing at which both attorney and client testify as to the nature of their conflict." *United States v. Morrison*, 946 F.2d 484, 499 (7th Cir.1991). At a minimum, the "district court must engage in some inquiry as to the reasons for the defendant's dissatisfaction with his existing attorney." *Zillges*, 978 F.2d at 372 (quoting *McMahon v. Fulcomer*, 821 F.2d 934, 942 (3d Cir.1987)). Here the district court held a hearing at which Brown and his attorney were permitted to explain their concerns about the attorney-client relationship. The record reveals that prior to the hearing the magistrate had read Brown's letter requesting substitute counsel, and had at least received his attorney's motion, and so was familiar with Brown's complaints. Before Brown argued his position, the magistrate informed him of the legal standard she intended to apply in evaluating the motion.[5] She then requested that he "explain in some specific detail ... the reasons for [his] dissatisfaction with Mr. Lowe," which Brown did. Brown's attorney was then permitted to defend his competence and argue why new counsel should nonetheless be appointed. The magistrate even allowed counsel for the prosecution to relate her impressions of the vigor of Lowe's representation. The record also reveals that the magistrate was constructively engaged in the hearing and understood its details, asking questions and voicing her concerns. In short, there is no question that the magistrate's inquiry into the reasons for Brown's motion was adequate.

In the end the magistrate denied Brown's motion because she found the evidence fell far short of showing that Brown and Lowe were so at odds as to prevent an adequate defense, a showing she held was essential to granting a motion for substitute counsel. Although the magistrate erred in concluding that her inquiry was legally constrained to finding a total breakdown in attorney-client communication (*see supra* note 4), we cannot disagree with her factual conclusion. As Brown points out on appeal, he and Lowe indeed had a spat in open court, with Lowe suggesting his client was a liar. The evidence certainly confirms that by the time of the hearing Brown and Lowe were not getting along. But it does not appear that "the conflict between [Brown] and [Lowe] was so great that it resulted in a total lack of communication preventing an adequate defense." *Zillges*, 978 F.2d at 372. In fact, other than the one outburst that quickly ended with Lowe's apology, the discussion was detailed and straightforward. Brown and Lowe admitted at the hearing that they had had

**5.** The magistrate instructed Brown that "according to the Seventh Circuit case law, the only way the Court can grant a motion for substitution of attorneys is when counsel and the defendant are so at odds, and the conflict is so great that there's a total lack of communication between the parties, resulting in preventing an adequate defense of your case." This statement assumes that when evaluating the merits of a request for substitute counsel, the trial court must apply the same standard we apply on appeal. In fact the judge's discretion is not nearly so restricted. As already explained, the freedom to "select and be represented by one's preferred attorney" is a "right" which is "comprehended by the Sixth Amendment." *Wheat*, 486 U.S. at 159, 108 S.Ct. at 1697; *Powell*, 287 U.S. at 53, 53 S.Ct. at 58. There is always a "presumption in favor of [a defendant's] counsel of choice." *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700. Therefore, the magistrate's understanding that she could not grant a substitution of counsel absent the strenuous criteria she elaborated was incorrect.

substantive, if argumentative, conversations within the past week; thus at least some communication was occurring. Moreover, there is simply no evidence that Lowe was failing in his duty to provide an effective defense. As the magistrate stated in the memorandum accompanying the order, Lowe had already engaged in significant trial preparation, had interviewed some witnesses, and had an investigator seeking the additional unnamed witnesses Brown alleged were essential to his defense. Thus Brown's claims of attorney dereliction were inaccurate. Further, throughout the pretrial proceedings, Lowe appears to have been well prepared and competent. Lowe's performance at the June 14, 1994 suppression hearing, for instance, was professional and vigorous. Furthermore, after the July 22 hearing, the record shows no other attorney-client problems before or during the trial which began on September 19. Thus, the evidence does not establish a substantial breakdown in attorney-client communication preventing an adequate defense.

Of course, the list of factors elaborated in *Zillges* is not exhaustive. Abuses of discretion can come in many forms, not all of which can be anticipated by neat three-part tests. We find it significant, therefore, that the magistrate was open to the possibility of granting a subsequent motion should the relationship continue to deteriorate. The magistrate explicitly indicated at the end of the hearing that if the "situation should change, you can certainly come back to the Court." Thus, Brown's motion was denied, but the possibility of new counsel was not definitively foreclosed. With two months to go before trial and plenty of opportunities for further complaint, no subsequent motion was made until after Brown was convicted. From this

we may infer that the rift in the attorney-client relationship was sufficiently mended.

Because the "evaluation of the facts and circumstances of each case" has been "left primarily to the informed judgment of the trial court," *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700, trial courts have the main responsibility for protecting the Sixth Amendment right to choice of counsel, subject only to review on appeal for abuse of discretion. It is clear that, at the outset, Brown and his attorney did not have a good relationship. With two months remaining before trial, a substitution could have been effected without any adverse impact on the proceedings. However, new counsel would not have had the familiarity Lowe gained in preparing motions and in representing Brown at an evidentiary hearing. Therefore, while substitution of counsel would have been a reasonable decision, we find no abuse of discretion in the magistrate's determination to rule otherwise.[6]

## B. Fourth Amendment Claims

Brown seeks to overturn his third conviction on the ground that key evidence was seized in violation of the Fourth Amendment. He argues first that the stop on November 24, 1993 was actually an illegal arrest and that the evidence subsequently recovered should have been suppressed. As a separate argument, Brown contends that the evidence was not in plain view as the government claims and thus was unlawfully seized. We address the latter argument first.

### 1. Search and seizure.

The government justifies its warrantless search of Brown's bag and seizure of his gun under the plain view doctrine. It claims that once Officer Benitez observed the shiny ob-

---

**6.** Given our holding that the magistrate did not abuse her discretion in denying Brown's request for substitute counsel, there is no need to address Brown's contention that a deprivation of the right to choice of counsel should not be subject to the harmless error rule of *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 (1984). Moreover, we note that our choice of counsel analysis includes a determination that, incident to its ruling, the court below conducted an adequate inquiry into defendant's allegations. Where such an inquiry

has occurred (as it did here), there will be sufficient evidence on the record to resolve the choice of counsel issue on appeal; where it has not, we would find an abuse of discretion and overturn the lower court's decision. *Zillges*, 978 F.2d at 372. Thus, contrary to Brown's contention, there is no need for extrinsic evidence. We therefore decline Brown's invitation to withhold ruling on the issue so that it may be resolved on collateral review with the help of extrinsic evidence.

ject which he "believed to be a gun," he had reason to examine the bag further. Brown counters that Officer Benitez's testimony at the suppression hearing refutes the government's plain view argument by showing that the incriminating character of the items in the bag was not immediately apparent. Prior to searching the bag, Officer Benitez could only identify "a shiny, chrome object;" a further search was necessary to confirm its incriminating character, and thus the plain view exception cannot apply.

■ The plain view doctrine permits a warrantless seizure where the officer has a legal right to be in the place from where he sees the object subject to the seizure and "a lawful right of access to the object itself," and if "the object's incriminating nature is immediately apparent." *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *United States v. Willis*, 37 F.3d 313, 316 (7th Cir.1994) (same standard applied to seizure of evidence in car); *United States v. Berkowitz*, 927 F.2d 1376, 1388 (7th Cir.1991). Regarding the last requirement, the Supreme Court has stated that where "the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.*, if 'its incriminating character [is not] immediately apparent,' [citation omitted]—the plain view doctrine cannot justify its seizure." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993).

Brown properly does not contest Officer Benitez's legal right to look into his car from the street, for "[t]here is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (plurality opinion) (citations omitted). Rather, as noted, Brown challenges the government's position that the gun's incriminating nature was immediately apparent. If Brown is correct, Officer Benitez did not have a lawful right to open the bag and access the gun.

To resolve this matter it is useful to parse some of the interests and potential violations at issue under the Fourth Amendment. The Fourth Amendment protects at least two distinct constitutional interests, privacy and possession (or dominion), from invasion by two distinct governmental encroachments, searches and seizures. "A *search* compromises the individual interest in privacy; a *seizure* deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) (citing *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)) (emphasis added). The plain view doctrine "is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest." *Horton*, 496 U.S. at 133–34, 110 S.Ct. at 2306 (citations omitted).

■ Therefore, it is critical, if somewhat obvious, that a plain view seizure involve an identifiable object actually in plain view. A person still retains a measure of his protected privacy interest in property which is only partially secreted but whose nature is not immediately apparent to those lawfully observing. The question is whether police seizure in such a circumstance first requires further investigation—a search—to determine what the object actually is. If the officer, unsure of what the object is, needs to uncover what he cannot already see to verify that it is probative of criminal activity, that verification process entails a search. As the Supreme Court held in *Horton*, warrantless searches of that kind cannot be justified under the plain view doctrine, only seizures. *Id.* Thus, for a plain view seizure to be proper, the object must already be sufficiently exposed that a further search to discover or verify its character is unnecessary—its exposure must be such that it is no longer protected by the privacy interests of its possessor. Or, in the Supreme Court's language, the "incriminating character" of the object must be "immediately apparent." *Dickerson*, 508 U.S. at 375, 113 S.Ct. at 2137.

■ Officer Benitez's testimony does not sufficiently support the government's assertion that the gun was in plain view. Rather, inside the partially opened bag on the floor of the car Officer Benitez saw, in his own words, "a shiny chrome object, it looked like to be metal of some kind." Even with his flashlight shining on it, he only *"thought* it to be a weapon" so he "moved in closely and took another look at it and *opened the bag a little bit farther up to see what was in that,* what kind of shiny object it was." Thinking a metal object might be a weapon does not meet the standard for plain view. The only item "immediately apparent" was a shiny chrome metal object of some kind. In order to determine what it was—in order to determine that it was a gun and not, say, a flashlight—Officer Benitez had to further open the bag. The weapon (plus another gun and other incriminating items) then found was the product of a search, not something merely seized because it was in plain view.

This is a close question. It was probably reasonable to suppose the shiny object was a gun. But because that fact was not immediately apparent, putting the gun in plain view, Officer Benitez's search of the bag without a warrant (assuming no other valid exception) violated Brown's constitutionally protected privacy interests under the Fourth Amendment. Therefore, it was clear error for the magistrate judge to admit the evidence seized during the November 24, 1993 stop under the plain view doctrine. *United States v. Spears,* 965 F.2d 262, 271 (7th Cir.1992) (clear error review on appeal).

■ Yet there may be another basis for upholding the search, an argument that was raised below but not resolved because the plain view argument prevailed. Thus it was also not addressed on appeal. *See Indemnified Capital Inv. v. R.J. O'Brien & Assoc.,* 12 F.3d 1406, 1410 (7th · Cir.1993) (appellate court can affirm on any ground that finds support in the record); *Reinstine v. Rosenfield,* 111 F.2d 892, 894 (7th Cir.1940) ("From time immemorial courts of appeal·have been authorized to affirm the rulings of lower courts for any valid reason based on the evidence, although not assigned.") As an alternative to its plain view argument, the government contended before the magistrate that, assuming there was a search, it was justified because of "exigent circumstances which existed because the officers were concerned with their safety." Brown denied the circumstances justified a protective search. Because the magistrate upheld the seizure solely on the basis of plain view, she never addressed the alternative argument that the search was justified by the danger of the situation.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that the "need for law enforcement officers to protect themselves and other prospective victims" may, under certain circumstances, justify a protective search (patdown) of a suspect even absent probable cause for an arrest. *Id.* at 24, 88 S.Ct. at 1881. *Terry* was later extended to permit limited searches of automobiles. In *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), the Court concluded that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* (citing *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879–80). The Court explained that the objective reasonableness of the officer's apprehensions is the principal concern. " '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Id.* (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883); *see also United States v. Evans,* 994 F.2d 317, 320–21 (7th Cir.1993) (inquiry considers totality of the circumstances).

Although we may affirm on any ground based in the record, *Indemnified Capital Inv.,* 12 F.3d at 1410, the record before us lacks a factual finding by the district court on whether, under the circumstances, Officer Benitez "possessed a reasonable belief based on specific and articulable facts" that Brown or Jones was "dangerous" and capable of "gain[ing] immediate control of weapons." *Long,* 463 U.S. at 1050, 103 S.Ct. at 3481. Such a finding first requires "decisions about

the weight of evidence" and "the credibility of witnesses," determinations which Congress has assigned to the district courts, *United States v. DeCorte*, 851 F.2d 948, 952 (7th Cir.1988), whose "major role is the determination of fact." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The duty of an appellate court in these matters is to ensure that the district court's factual findings are not clearly erroneous. See Fed.R.Civ.P. 52 ("Findings of fact ... shall not be set aside unless clearly erroneous."); *Spears*, 965 F.2d at 271. As the Supreme Court has admonished, "appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)). Therefore, we remand to the district court for a finding on the protective search issue. This determination should be based on the existing record and confined to the testimony and other evidence previously presented. *See United States v. Talkington*, 843 F.2d 1041, 1046 (7th Cir.1988).

### 2. Arrest.

Brown also contends that the evidence seized on November 24, 1993 was the fruit of an unlawful arrest and thus should have been suppressed. Brown claims he was arrested when an officer handcuffed him and placed him in the back of the police car immediately after pulling him over. According to the government, however, Brown was not legally placed under arrest until after the gun was discovered.

 Though it would seem anomalous, we have previously held that where safety is at issue handcuffing is not a *per se* arrest for purposes of the Fourth Amendment. *See United States v. Smith*, 3 F.3d 1088, 1095 (7th Cir.1993). Handcuffing and placing in a squad car, as happened here, would seem to be a step beyond that, however. Still, we need not decide precisely when Brown was arrested because, regardless, no evidence was seized as a result. The government has never sought to justify the search by claiming it occurred incident to a lawful arrest. Quite the contrary, it has maintained that the seizure of the gun from the bag justified the arrest, which necessarily excludes the position that the officers searched the bag pursuant to a lawful arrest: either the arrest resulted from the search of the bag or the search of the bag resulted from the arrest—both cannot be true. Thus there is no merit to Brown's argument. The propriety of the search will turn on whether there were grounds for a protective search under the principles elaborated above.

### III. Conclusion

The magistrate did not abuse her discretion in denying Brown's request for substitute counsel. Nor was evidence seized incident to an unlawful arrest. However, we remand for a determination of whether the search of the bag was justified as a protective search under the Fourth Amendment.

AFFIRMED IN PART AND REMANDED.