124 F.3d 205
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United STATES of America, Plaintiff-Appellee,
v.
Antonio Green, Defendant-Appellant.
 No. 97-1221.
 United States Court of Appeals, Seventh Circuit.
 July 17, 1997.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin
 ORDER
 After being indicted on one count of possession with intent to distribute cocaine in excess of 500 grams in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, Antonio Green filed a motion to suppress evidence seized from his vehicle during a stop by Milwaukee police. The magistrate judge recommended denying Green's motion to which Green did not object. The district court then adopted the recommendation. Green entered a conditional guilty plea preserving his right to appeal. The district court entered the judgment of guilty and sentenced Green to 65 months' imprisonment. Green appeals the denial of his motion to suppress asserting that Milwaukee police officers made an unreasonable investigatory stop of his vehicle, the cocaine retrieved from his vehicle was not in plain view, and he was constructively arrested following the traffic stop. For the following reasons, the district court is affirmed.
 At the motion to suppress hearing, Milwaukee Police Detective, Rayford Wesson, testified that on April 24, 1996, he received information from a confidential informant that Green had called him about a large quantity of drugs for distribution the next day. The informant also told Detective Weston that Green often transported drugs in a "Blazer-type" vehicle. Detective Weston testified that he received another phone call on April 24 from a second confidential informant stating that Green also contacted him about a large quantity of drugs Green would have the next day. The second informant stated the Green would be transporting the drugs in a black 4-wheel drive vehicle. Prior to the informants contacting Detective Weston, Weston testified that he was familiar with Green's reputation for drug trafficking "on a larger scale than most street dealers are associated with."[1]
 Detective Weston also testified to the reliability of the confidential informants. He stated that he had worked with the first informant for two years on cases which included at least three controlled buys resulting in arrests and convictions. The informant also helped the police locate fugitives and connected the police with at least five people who conducted controlled buys. Detective Weston testified that he had worked with the second confidential informant on a limited basis because the informant worked mainly with the FBI. Detective Weston explained that this informant had worked with the Milwaukee police with narcotics investigations on at least two prior occasions and helped police with information leading to the execution of search warrants. Detective Weston testified that to the best of his knowledge, neither informant had ever given false--information to the Milwaukee Police Department.
 On April 25, 1996, the day after the confidential informants' phone calls, Detective Weston and other Milwaukee police officers conducted a surveillance of Green's business. When they arrived at Green's store, they noticed a black Chevy Blazer parked in front and ran a check of the license plate, which listed the vehicle as Green's. One of the officers established that Green's vehicle registration was suspended and the license plate was expired. This officer then informed the other officers of the plate and registration status.
 Approximately thirty minutes after the surveillance began, Green exited his business and got into the driver's side of the Blazer with another person, Jarvis Robinson, who sat in the front passenger seat. The officers were in four police vehicles following Green for at least fifteen minutes as he drove evasively and erratically, i.e., through parking lots, changing directions in an alley, against traffic, and making U-turns. At this time, the officers were in contact with each other via police radio. Due to Green's irregular driving, including looking over his shoulder at the police, Detective Weston lost sight of the Blazer twice. Detective Weston then ordered Officers Jason Smith and David Dalland to stop Green because Detective Weston believed Green was transporting drugs. Detective Weston testified that he based his decision to stop Green on the information obtained from the informants, Green's "suspicious driving habits," Green's expired plate and suspended registration, and the way Green looked over his shoulder when the police officers were following him.
 Officer Smith testified that he and Officer Dalland pulled Green over per Detective Weston's order after they activated the squad car's lights. Officer Smith testified that after the Blazer came to a stop, he approached the driver's side while Officer Dalland went to the passenger side. As Officer Smith approached the driver's side, he observed Green lean forward. Specifically, Officer Smith testified that he saw Green's shoulder shift toward his feet and could see his head dip down. Smith testified that, based on his experience with the narcotics section of the Milwaukee Police Department, he suspected that Green may have a concealed weapon or narcotics. Officer Smith then removed Green from the vehicle and did a pat-down search for weapons. He did not find any weapons, but led Green to the rear of the vehicle asking for Green's driver's license and information about the Blazer's ownership.
 Officer Smith then directed Green to remain at the back of the Blazer with Officer Dalland. Robinson was also at the back of the Blazer and testified that "they made us go sit on the back bumper of the truck...."[2] Officer Smith returned to the driver's side to inspect the area where Green had leaned forward. Smith looked through the open driver's side door and bent down to examine the area under the driver's seat where he saw a white plastic bag. Officer Smith testified that the bag was an open plastic freezer bag with a white powdery substance inside. Based on his experience, Officer Smith testified that he concluded the substance was cocaine. After Officer Smith notified Officer Dalland of the discovery, Green and Robinson were placed under arrest and handcuffed. At that time, Officer Smith also issued Green a citation for operating a vehicle with a suspended registration.
 Robinson also testified at the suppression hearing, stating that he and Green left Green's store separately, meeting later after Robinson went to his mother's house. He testified that he and Green were going to get food before watching an NBA game at a sports bar. Robinson stated that they were driving around for a few moments then parked along the side of the road when two police officers approached them. Robinson testified that the police demanded that they put their hands up and that he and Green were then handcuffed after they were taken to the back of the truck.
 The district court concluded that Robinson's credibility was suspect because he gave ambiguous answers on cross examination and testified that he did not recall everything that happened on April 25, 1996. On the other hand, the district court concluded that Detective Weston's and Officer Smith's testimony regarding Green's erratic and evasive driving was more credible and that Green's driving tactics demonstrated that he was attempting to avoid the police contact "at all costs."
 First, the government contends that Green's appeal should be dismissed because Green failed to file objections with the district judge regarding the magistrate judge's recommendation to deny the motion to suppress. We have held that the failure to file objections to a magistrate's recommendation waives the issue on appeal. United States v. Brown, 79 F.3d 1499, 1504 (7th Cir.), cert. denied, 117 S.Ct. 196 (1996). Here, Green concedes that he failed to object to the magistrate's recommendation, but maintains that this court has the authority to decide his appeal on equitable grounds. See id. at 1504-05. In Brown, we acknowledged that the waiver rule is not jurisdictional and therefore should not be applied if the ends of justice are defeated. Id.
 
 
 1
 In fact, Green did not object to the magistrate's recommendation, thereby waiving his argument on appeal. To the extent that Green could argue that the government "waived" his waiver by entering into a conditional plea agreement, an issue not raised by defendant on appeal, we conclude in any event that Green's appeal would fall on the merits.
 
 
 2
 In general, Green argues that the police officers did not have reasonable suspicion to conclude that the stop of his Blazer was warranted. Even though legal determinations of reasonable suspicion and probable cause are reviewed de novo, see Ornelas v. United States, 116 S.Ct. 1657, 1663 (1996), in the context of a motion to dismiss, we review the district court's findings of historical facts for clear error. United States v. Stribling, 94 F.3d 321, 323 (7th Cir.1996). In order for police to make an investigatory stop the "officer must be able to point to specific and articulable facts" giving rise to a reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968). This court's focus involves the events leading up to the stop and whether the historical facts viewed from the standpoint of an objectively reasonable police officer amount to reasonable suspicion. Omelas, 116 S.Ct. at 1661-62.
 
 
 3
 Green specifically contends that the confidential informant's tips to the police were unreliable. The Supreme Court discussed the reliability of informants' tips as they relate to reasonable suspicion, concluding that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Alabama v. White, 496 U.S. 325, 330 (1990). Giving due weight to the inferences drawn by Detective Weston, it is evident that the two confidential informants were reliable. Detective Weston testified that they had successfully worked for him in the past. He also testified that there was no indication that the confidential informants gave false information to the police. The confidential informants' information included the exact day that Green would have drugs for distribution and that Green drove a black 4-wheel drive vehicle. The informants indicated that the source of information was from Green himself, not a secondary source.
 
 
 4
 In addition, the information received from the trusted confidential informants was just one factor supporting Detective Weston's reasonable and articulable suspicion that Green was engaged in drug trafficking. The information from the informants was corroborated by Green's erratic driving and his traffic violations. In United States v. Ocampo, 890 F.2d 1363, 1368 (7th Cir.1989), we evaluated facts involving a tip from an informant who received information from a secondary source, along with corroborating factors, concluding that the Terry stop was supported by reasonable suspicion. Here, taken together, the surveillance of Green, the information from reliable sources, and Green's traffic violations amount to reasonable suspicion that Green was involved in drug trafficking.
 
 
 5
 Green also asserts that the police officers used his expired plate and suspended registration as a pretext to search his Blazer for drugs. In Whren v. United States, 116 S.Ct. 1769 (1996), the Supreme Court held that the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred; the actual motivations of the officers play no role in the probable cause analysis. Id. at 1772-74; Valance v. Wisel, 110 F.3d 1269, 1275 (7th Cir.1997). In this case, the police had probable cause to believe that Green had committed traffic violations after they discovered that his registration was suspended and that his license plate had expired; therefore, Green's pretext argument fails.
 
 
 6
 Next, Green asserts that there was no probable cause to search his Blazer because the cocaine was not in plain view. The plain view doctrine allows the police to conduct warrantless seizures of incriminating evidence if (1) "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;" (2) the item is in plain view; and (3) the incriminating character of the item is immediately apparent. Horton v. California, 496 U.S. 128, 136-37 (1990).
 
 
 7
 First, the stop was legitimate under Terry based on information Officer Weston relied upon, as discussed above. The cocaine was in plain view, as the driver side door was left ajar enabling Officer Smith to stand outside the Chevy Blazer and permissibly observe the bag of cocaine. See United States v. Willis, 37 F.3d 313, 316 (7th Cir.1994) (citing Texas v. Brown, 460 U.S. 730, 739-40 (1983)) (no legitimate expectation of privacy of interior of vehicle that may be viewed from the outside by a diligent police officer). Last, the incriminating character of the cocaine was immediately apparent to Officer-Smith, who had worked in the narcotics section of the Milwaukee Police Department and testified that he recognized that the open bag contained cocaine.
 
 
 8
 Officer Smith's search of Green's Blazer was also justified as a protective search. See United States v. Evans, 994 F.2d 317, 320-21 (7th Cir.1993). In Evans, we concluded that a defendant's furtive gesture of leaning forward in the driver's seat caused the officers to encounter a specific fear that the defendant was armed. Id. at 319-21. Here, Officer Smith testified that Green shifted his shoulder and leaned forward toward his feet, a similar movement made by the defendant in Evans. This, along with Officer Smith's experience and the nature of the stop, provide a reasonable basis for a protective search of the area where Green may have placed a weapon in which he could gain immediate control. See Michigan v. Long, 463 U.S. 1032, 1049 (1983); Valance, 110 F.3d at 1277.
 
 
 9
 Last, Green contends that he was handcuffed after the police initially stopped him and, thus, was constructively arrested. However, the district court found that Green's allegation had no factual basis, concluding that Green and Robinson were escorted to the rear of the Blazer and Officer Dallandn remained with them while Officer Smith conducted the search. The district court also concluded that Robinson's testimony corroborated Officer's Smith when Robinson said "they made us go sit on the-back bumper of the ntruck...." The court relied upon Officer Smith's testimony indicating the defendants were handcuffed and placed under formal arrest after he found the cocaine, not Robinson's testimony that they were immediately handcuffed. We give special--deference to findings based upon credibility determinations; the district court's choice among competing witnesses is almost never clearly erroneous. See United States v. Robinson, 14 F.3d 1200, 1204 (7th Cir.1994). As such, the district court did not clearly error in determining that the police testimony was believable and more credible than Robinson's account.
 
 
 10
 For the foregoing reasons, the district court is AFFIRMED.
 
 
 
 [1]
 Motion to Suppress Hearing Transcript at 20
 
 
 [2]
 Motion to Suppress Hearing Transcript at 75