**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Darryl SIMMONS, Defendant–Appellant.**

No. 97–1763.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1997.

Decided Nov. 19, 1997.

Amy St. Eve, Barry Rand Elden (argued), Office of the U.S. Atty. Criminal Appellate Div., Chicago, IL, for Plaintiff–Appellee.

James A. Graham (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and RIPPLE and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

■ Does a district judge abuse her discretion when she orders, as a condition of supervised release, that a defendant submit to drug testing and treatment at the discretion of a probation officer when the defendant was convicted 7 years earlier in an unrelated case for distributing cocaine, violated supervised release 2 years ago in the earlier case by testing positive for ingesting cocaine, and in the present case, although it only involved passing counterfeit $20 bills, marijuana and cocaine were found in a bag connected to the defendant that contained additional counterfeit money? We think merely stating the question implies the obvious answer—of course not. The sentencing guidelines permit drug testing and treatment as a condition of supervised release "if the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol." U.S.S.G. § 5B1.4(b)(23). When it comes to controlled substances, unlike alcohol which can be consumed legally, a user is by definition an abuser. So here it was not an abuse of discretion for the district judge to find that Darryl Simmons fit this provision of the guidelines like a hand sliding into an Isotoner. His appeal on this point, the major issue he stresses, is without merit.

■ As a final issue, Simmons claims that the district judge erred when she denied a motion to discharge his appointed counsel, James A. Graham. On this issue, like the last one, we look for an abuse of discretion.

Simmons passed a batch of counterfeit $20 bills at Chicago's Midway Airport. His counterfeit bills paid for a Southwest Airlines ticket and certain other items at the airport. Without a conceivable defense to the charge, Simmons pled guilty to passing counterfeit notes in violation of 18 U.S.C. § 472. When he entered his guilty plea, although everything between Simmons and Graham may not have been hunky-dory, no serious problems came to the fore. In fact, Simmons told the judge that Graham had been "straight up with [him]." He also said he had no doubt Graham was acting in his best interest. Several days later, however, Graham reported in a motion that Simmons wanted him to step

aside. The motion was denied. Because the record was devoid of evidence of any real conflict—let alone an irreconcilable one—between Simmons and Graham, we do not believe the district judge abused her discretion in denying the motion. It's not all that unusual for a defendant to be unhappy with his lawyer, especially one appointed for him by the court, for often the lawyer is the bearer of bad tidings. The lawyer must often tell the defendant news he doesn't want to hear, like the fact that the prosecutor is holding all the cards and the best defense is to make a deal and take some medicine. The minor spat between Simmons and Graham was nothing out of the ordinary.

Lastly, we note that Simmons never sought to withdraw his plea, so the only possible prejudice he could claim by having an unwanted attorney at his side must relate to sentencing. And Simmons has not identified any way in which Graham's representation at sentencing was deficient. In fact, the adequacy of Graham's representation is aptly demonstrated by his ability to persuade the judge that she should not hold Simmons accountable for additional counterfeit bills the government, convincingly it seems, traced to him. Had these bills been added to the mix, Simmons' sentencing range would have been higher than the 4– to 10–month range Graham helped establish, and his sentence would have probably been greater than the 7–month term the judge imposed.

For these reasons, the judgment of the district court is

AFFIRMED.

RIPPLE, *Circuit Judge*, concurring.

I join the judgment and the opinion of the court. I write only to emphasize that the district court's truncated treatment of defense counsel's motion to withdraw would not pass muster under circumstances other than the unique ones presented here. *See United States v. Zillges*, 978 F.2d 369, 371–73 (7th Cir.1992).

It is important to note that, although the defense had noticed the motion for January 9, neither Mr. Simmons nor his attorney appeared. Mr. Simmons therefore waived an opportunity to expand further on the basis of his unhappiness with counsel. The motion was sufficiently detailed for the court to act, and the representations made by the defendant at the change of plea hearing, only days before, clearly contradicted the claim put forth in the motion that counsel had not acted in Mr. Simmons' best interest. Moreover, there was no evidence in the record of an irreconcilable conflict or total lack of communication.

Mr. Simmons never asked for another opportunity to apprise the court of any circumstances not disclosed by the record already before the court. Moreover, as the court's opinion notes, Mr. Simmons cannot identify any prejudice he suffered as a result of the court's decision. Therefore, if there was error, it was harmless because it did "not result in a violation of ... defendant's Sixth Amendment right to effective assistance of counsel." *Zillges*, 978 F.2d at 372.

Given these unusual facts, it would be a mistake for the bench and bar to read our holding today as a retreat from the standards we traditionally have maintained when reviewing a district court's hearing on the adequacy of representation. *See United States v. Brown*, 79 F.3d 1499, 1505–07 (7th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 196, 136 L.Ed.2d 133 (1996). Under the unique circumstances presented here, any shortcoming of the district court's inquiry was harmless.