In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1150

United States of America,

Plaintiff-Appellee,

v.

Orpheus Huston,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00-CR-152--J.P. Stadtmueller, Chief Judge.

Argued September 20, 2001--Decided February 20, 2002


   Before Ripple, Kanne, and Rovner, Circuit
Judges.

   Kanne, Circuit Judge.  A jury convicted
Orpheus Huston of aiding and abetting in
the distribution of cocaine base ("crack
cocaine"). Huston appeals on the basis
that he was deprived of his Sixth
Amendment right to effective assistance
of counsel because the district court
failed to conduct a proper inquiry into
his request for new counsel. We affirm.

I.  History

   In late September of 1999, a registered
FBI informant, Albert Perkins, contacted
Dorrie Washington in an effort to
purchase a large quantity of crack
cocaine. While Washington did not have
any crack cocaine, she offered to
introduce Perkins to someone who did have
crack cocaine in exchange for an
"introduction fee." Washington also told
Perkins that the price for "an egg and a
half" of crack cocaine would be $6,500.
Later that day, Washington suggested that
Perkins meet Huston in order to purchase
the crack cocaine. Next, FBI agents made
arrangements with Perkins to conduct a
controlled purchase. Perkins drove to
Washington's house, met Washington, and
together they drove to the Candyland
store at 3413 West North Avenue in
Milwaukee ("Candyland"). At Candyland,

Washington introduced Perkins to Huston, the Candyland owner. Huston told Perkins that he did not have any crack cocaine at the time, and Perkins and Washington left the store.

Later that same night, Perkins placed a phone call to Huston, which the FBI recorded and monitored. During that call, Perkins and Huston discussed the crack cocaine purchase, and Huston stated that he still did not have the crack cocaine but that he and Perkins should meet the next morning. The next day, FBI agents again made arrangements with Perkins to conduct a controlled purchase, but when Perkins met Huston, Huston did not have the crack cocaine. Over the next few days, Perkins called Washington several times in an effort to set up another meeting with Huston.

On the morning of September 28, 1999, FBI Special Agents Gregory Spencer and Mark Bowling met Perkins at a prearranged location. Agents Spencer and Bowling searched Perkins and his car and finding neither drugs nor money, they gave Perkins $6,610 in prerecorded money./1 Perkins, trailed by Agents Spencer and Bowling, went directly to Washington's house to pick her up. Perkins and Washington then drove to Candyland. At approximately 11:30 a.m., Detective Kuhtz of the Milwaukee County Sheriff's Department and Officer Matos of the City of Milwaukee Police Department witnessed Perkins and Washington enter Candyland. Upon entering Candyland, Huston greeted Perkins and directed him to a room in the back of the store. All law enforcement agents remained outside of Candyland during the controlled purchase. Huston and Perkins went into the back room while Washington stayed at the front of the store. In the back room, Huston pulled out a plastic bag containing 248 grams of crack cocaine from his desk. Huston then handed the crack cocaine to Perkins, and Perkins paid Huston $6,500. Huston left the back room and met Washington at the front of the store and gave her $110.

At approximately 11:35 a.m., Detective Kuhtz and Officer Matos witnessed Perkins exit Candyland with the bag of crack cocaine. Washington and Huston stayed at Candyland until 11:45 a.m. Upon Perkins's departure, Agents Spencer and Bowling resumed visual surveillance, and Perkins

drove directly from Candyland to the predetermined rendezvous site. At the rendezvous site, Perkins gave Agent Spencer the plastic bag containing the crack cocaine and Agent Spencer took Perkins's statement. Agent Bowling searched Perkins and his car for a second time and found neither drugs nor money.

On July 21, 2000, an arrest warrant was issued for Huston. Six days later, on July 27, 2000, Huston retained attorney James Toran to represent him. On August 8, 2000, Huston was indicted for aiding and abetting in the distribution of crack cocaine, in violation of 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2. On August 22, 2000, a superseding indictment added Washington as a co-defendant. On August 25, 2000, both defendants were arraigned and trial was set for October 23, 2000. After being released on bail, Huston went to Toran's office and obtained his case file./2

On the morning of the joint trial, Toran informed the court that Huston had not returned the case file. Further, Toran stated that he had not completely reviewed the case file before Huston obtained it. Toran explained to the court that he had called the courtroom deputy clerk on October 20, 2000, and told him that he did not have the case file. Toran stated that the deputy clerk then suggested he obtain the case file from his client and proceed to trial.

The district court then asked Huston to address any problem he had with Toran. Huston stated that even though he and Toran had spoken "numerous times," they had been unable to meet. Huston stated that he "d[id]n't feel that [Toran was] prepared to represent [him] in this case at this time because [they had not] discussed anything about the case." Huston then asked the court for new counsel or, in the alternative, for time to review his case file with Toran. The court inquired into the case file's location and Huston stated that he did not bring the case file with him. The court ordered Huston to retrieve the case file immediately, and Huston left the courthouse and returned forty-five minutes later with the case file.

Upon Huston's return, the court denied Huston's request for new counsel and

noted that neither Huston nor Toran raised any concern at the pretrial conference the preceding week. Further, the court acknowledged that Huston's case was straightforward and involved only one discrete drug transaction. The court then stated that opening statements would not begin that day. The district court also provided an eighteen-hour recess and a conference room for Huston and Toran to review the case file and prepare for trial. Finally, the court asked Huston and Toran if either of them had anything else to address before adjourning for the day. Toran stated that it was possible that he would have to add one witness to his witness list. Huston remained silent.

Opening statements began the morning of October 24, 2000. All testimony was completed by that afternoon, and on October 25, 2000, the jury found Huston and Washington guilty. Huston did not voice any complaint about Toran or his representation on October 24 or 25. Huston now appeals, contending that the district court's inquiry into his request for new counsel was inadequate, and therefore, his conviction should be reversed. In the alternative, Huston seeks a remand to determine whether Toran's representation was constitutionally deficient.

II. Analysis

When a defendant has been given the opportunity to explain the reasons behind his request for new counsel, we review the denial of that request for an abuse of discretion. See United States v. Bjorkman, 270 F.3d 482, 500 (7th Cir. 2001). As Huston concedes, the district court permitted him to articulate his concerns with Toran's representation and his reasons for seeking new counsel. Therefore, our review is for abuse of discretion. See id. To determine whether a denial of a request for new counsel constitutes an abuse of discretion, we consider several factors, including (1) the timeliness of the request, (2) the adequacy of the court's inquiry into the defendant's request, and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication and prevented an adequate defense. See id.; United States v. Zillges, 978 F.2d 369, 372 (7th Cir. 1992). Even if we find an

abuse of discretion, we will uphold the district court's decision to deny a request for new counsel unless the defendant establishes that he was deprived of his Sixth Amendment right to effective assistance of counsel. See Bjorkman, 270 F.3d at 500.

As Huston concedes, his request for new counsel was not timely because it was made the morning of trial. Cf. United States v. Brown, 79 F.3d 1499, 1506 (7th Cir. 1996) (holding request made two months before trial timely); Zillges, 978 F.2d at 372 (one month). Our concern, of course, with untimely requests for new counsel is that they are nothing more than tactics to manipulate or delay the trial. See United States v. Golden, 102 F.3d 936, 941 (7th Cir. 1996). Huston contends that even though his request was untimely, there was no indication that the request was a tactic to delay. We disagree. At the pretrial conference the week before trial at which both Toran and Huston were present, Huston did not voice any concern with Toran. Moreover, although it is the basis for his inadequate counsel claim, Huston failed to bring the case file to that conference or, indeed, to the trial itself. Huston's actions belie his contention that his request for new counsel was genuine, and it seems to us that the district court could have dismissed his request outright as untimely.

In any event, we find that the district court's investigation into Huston's request was adequate. In Bjorkman, 270 F.3d at 501, the district court gave the defendant an opportunity to fully express each of his concerns regarding his trial counsel. We noted that the court did not interrupt the defendant at any point and that when the defendant finished, the court asked him if he had anything further to say. See id. We found the district court's inquiry adequate because the "court's subsequent analysis reveal[ed] that it listened to [the defendant's] concerns, and responded thoughtfully and appropriately." Id. In the present case, the district court gave Huston an opportunity to explain the basis for his request for new counsel. Huston was very clear that he did not feel that Toran was prepared to represent him because, according to Huston, he and Toran had not discussed his case

adequately. In articulating the basis of his complaint, Huston stated that he believed that Toran was not adequately prepared because Huston possessed the case file. The district court then ordered Huston to obtain the case file and give it to Toran, which Huston did. Further, the district court provided an eighteen-hour recess, and allowed Huston and Toran to review the case file and prepare for trial in a courthouse conference room. As in Bjorkman, we find that the district court listened to Huston's request and responded thoroughly because the court directly addressed the sole concern raised by Huston. The district court also asked Huston and Toran whether they had anything more to address before adjourning for the day, thus supporting our conclusion that the district court's inquiry was adequate. See id.

Finally, any difficulty between Toran and Huston did not result in a total lack of communication preventing an adequate defense. See Zillges, 978 F.2d at 372. In Brown, 79 F.3d at 1506-07, we noted that even though the defendant and his attorney did not get along and were often "at odds," there was at least some communication occurring between the two. Further, we noted that the attorney had done some pretrial preparation including seeking additional witnesses and that the record lacked any indication that there were any attorney-client problems during the trial. See id. at 1507. We therefore held that "the evidence [did] not establish a substantial breakdown in attorney-client communications preventing an adequate defense." Id. In Bjorkman, 270 F.3d at 508, the defendant's request for new counsel was denied and the district court granted a thirty-five minute recess in order for the defendant and his attorney to discuss the case. In finding that there was sufficient communication between the parties, we noted that the defendant and his attorney had little difficulty communicating during the recess and that the defendant made no complaints regarding communication after the recess ended. See id. at 501. That the attorney conducted vigorous witness examinations also supported our conclusion there was sufficient attorney-client communication. See id.

In the present case, Huston was free on bond and he concedes that he and Toran spoke "numerous times" prior to trial. It is apparent that there had not been a breakdown in communication between the two. Moreover, the pre-trial record also supports the conclusion that there was no attorney-client breakdown because it shows that Toran had read the police report and was seeking witnesses to support Huston's case. See Brown, 79 F.3d at 1507. Further, Huston and Toran had over eighteen hours before the start of the trial to discuss the case and Huston never complained about his ability to communicate with Toran during that time or at any point subsequent to it. See Bjorkman, 270 F.3d at 501 (holding that no complaint after a thirty-five minute recess supported denial of request for new counsel). The record reveals that Toran vigorously cross-examined government witnesses and made compelling arguments on behalf of Huston at trial, and thus provides strong evidence that Huston and Toran were able to communicate sufficiently. See Bjorkman, 270 F.3d at 501. Therefore, the evidence fails to establish that there existed a lack of communication preventing an adequate defense.

In the end, the district court denied Huston's request because it believed that the evidence fell far short of showing that Huston and Toran were so unable to communicate as to prevent an adequate defense. The district court realized, and Huston admitted, that the only concern that Huston had with Toran was that Toran had not completely examined the case file. The district court granted Huston and Toran over eighteen hours of recess to review that file, which was more than enough time considering the facts of the case. Moreover, after having that time to meet with Toran, Huston did not voice any complaint regarding Toran's level of preparedness, and Toran presented a vigorous defense on Huston's behalf. We thus find no abuse of discretion in the district court's denial of Huston's request for new counsel.

III.  Conclusion

For the forgoing reasons, the conviction of the defendant is AFFIRMED and the request for remand is DENIED.

FOOTNOTES

/1 Perkins planned to give Huston $6,500 in exchange
for one-quarter kilogram of crack cocaine; Wash-
ington was to receive $110 for her introduction
fee.

/2 The record is not clear on what exact materials
were in the case file, the date Huston obtained
the case file, or who in Toran's office gave the
case file to Huston.