**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Vernon T. TRENTON, Defendant–Appellant.**

No. 02–3168.

United States Court of Appeals,
Seventh Circuit.

Submitted April 28, 2003.

Decided April 28, 2003.

Before POSNER, MANION, and WILLIAMS, Circuit Judges.

ORDER

Vernon "Trenthouse" Trenton took part in a downstate Illinois crack ring. He and an accomplice also robbed another dealer

of crack and cash after shooting the victim five times. In February 2002 a jury found Trenton guilty of one count of conspiracy to distribute and possess crack for distribution, 21 U.S.C. §§ 846, 841(a)(1), one count of conspiracy to possess crack, *id.* §§ 846, 844(a), and one count of use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). The district court sentenced him to a term of 293 months' incarceration for the distribution conspiracy, a concurrent term of 240 months' incarceration for the possession conspiracy, and a consecutive term of 120 months' incarceration for the firearm offense. The court also sentenced him to three concurrent terms of supervised release–eight years for count one, three years for count two, and five years for count three. Trenton's appointed counsel now moves to withdraw under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to identify a nonfrivolous issue for appeal. Trenton was invited to respond to counsel's motion, *see* Cir. R. 51(b), but he failed to do so. We therefore confine our review of the record to the potential issues identified in counsel's facially adequate brief. *See United States v. Tabb,* 125 F.3d 583, 584 (7th Cir.1997) (per curiam). We agree with counsel that the potential issues he discusses would be frivolous and therefore grant his motion and dismiss the appeal.

■ Counsel first evaluates whether Trenton could make a nonfrivolous argument that the district court abused its discretion by denying his motion for a bill of particulars. In his request, Trenton asked for the identity of his co-conspirators. But as counsel points out, Trenton would have to show that he suffered prejudice from the denial, *see United States v. McAnderson,* 914 F.2d 934, 946 (7th Cir. 1990), which he could not because the government's open-file discovery policy gave him adequate access to the information he sought. *United States v. Canino,* 949 F.2d 928, 949 (7th Cir.1991). We therefore agree with counsel that any challenge on this ground would be frivolous.

Counsel next examines whether Trenton could argue that the district court abused its discretion by denying his request for a severance of counts under Fed.R.Crim.P. 14. Before trial Trenton asked the court to sever Count One from Counts Two and Three because Count One did not require proof of prior convictions. We agree with counsel that such a challenge would be frivolous. Trenton waived this potential argument by failing to renew his motion at the close of evidence. *See United States v. Rollins,* 301 F.3d 511, 518 (7th Cir.2002); *United States v. Brown,* 870 F.2d 1354, 1360 (7th Cir.1989).

■ Counsel next evaluates whether Trenton could challenge the government's peremptory strikes of two African–American jurors in the venire. Trial counsel objected under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), but the district court overruled his objection. To survive a *Batson* challenge, a peremptory strike need not be based on a strong or good reason, but merely founded on a reason other than race or gender. *United States v. James,* 113 F.3d 721, 729 (7th Cir.1997). Here, a potential claim that the court clearly erred by rejecting the *Batson* challenge would be frivolous–the government stated that it excused the jurors because they were unemployed, and Trenton made no showing that a comparable white juror was selected despite similar concerns.

Counsel next evaluates whether Trenton could raise nonfrivolous challenges to his convictions based on the government's cross-examination of Trenton's brother Carlos. At one point, the government asked Carlos if he was a suspect in a

retaliatory shooting. This question was improper as it was neither probative of his veracity, *see* Fed.R.Evid. 608(b), nor involved a past criminal conviction, *see id.* 609(a). But we agree with counsel that any challenge based on this question would be frivolous. Because defense counsel did not object, we would review only for plain error. *See United States v. Smith,* 80 F.3d 1188, 1193 (7th Cir.1996). Thus, to prevail Trenton would have to establish that the error affected the fairness, integrity, or public reputation of the criminal proceeding. *See United States v. Bitterman,* 320 F.3d 723, 727 (7th Cir.2003). This he would be unable to do–the evidence against him was overwhelming, and there is no indication that the improper question had any bearing on the jury's verdicts. Counsel also examines the propriety of the government asking Carlos about comments made by family members regarding Trenton's drug use. But as counsel correctly points out, defense counsel opened the door to this inquiry by asking Carlos on direct whether he had seen Trenton use drugs. *See United States v. Anifowoshe,* 307 F.3d 643, 649 (7th Cir.2002).

Counsel also examines whether Trenton could argue that the district court abused its discretion by questioning Carlos Trenton on the stand. After Carlos hesitated to answer a question, Judge Murphy asked whether he knew the answer. This potential challenge too would be frivolous–judges may question witnesses to help clarify evidence for the jury as long as they remain impartial, *see United States v. Martin,* 189 F.3d 547, 553–54 (7th Cir. 1999), and the judge's involvement did not favor the government in any way.

■ Counsel next looks at whether the evidence was sufficient to support Trenton's convictions. We would evaluate such claims deferentially, considering the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *United States v. Taylor,* 226 F.3d 593, 596 (7th Cir.2000). To establish that Trenton conspired to distribute and possess crack for distribution, the government was required to prove that two or more people agreed to knowingly distribute or possess crack with the intent to distribute it, and that Trenton knowingly and intentionally joined in that agreement. *See United States v. Dumes,* 313 F.3d 372, 382 (7th Cir.2002), *cert. denied,* — U.S. ——, 123 S.Ct. 1499, 155 L.Ed.2d 239 (2003); *United States v. Martinez,* 301 F.3d 860, 865 (7th Cir.2002), *cert. denied,* 537 U.S. 1136, 123 S.Ct. 923, 154 L.Ed.2d 828 (2003). We agree with counsel that Trenton could not make a nonfrivolous challenge to the sufficiency of the evidence on this count. Dealer Thomas Norfleet testified that he and cousin Chris Williams recruited Trenton to bring in customers and to sell crack. According to Norfleet, Trenton lined up 50 or 60 users over a two-to three-month period. Informant John Hopkins testified that he observed dealer Demitiours Moore give Trenton a bag of crack, and that Trenton sold it to several people.

■ We also agree with counsel that Trenton could not make a nonfrivolous assault on his conviction for conspiracy to posses crack under §§ 846 and 844(a). Terrence Hill testified that he worked in tandem with Trenton to rob Tori Grundy of crack and cash. The two of them confronted Grundy as he was sitting in a parked car. As Trenton and Grundy talked about buying crack, Hill approached the car and shot Grundy five times. Trenton then took $300 worth of crack from the car. In addition, Grundy, who survived, testified that Trenton robbed him of two to three grams.

■ We also agree with counsel that this testimony provided sufficient evidence to support Trenton's conviction for using a firearm in connection with a drug trafficking crime under § 924(c)(1)(a). Trenton recruited Hill for the robbery and gave him the gun used to shoot Grundy; he is therefore directly responsible for the shooting under 18 U.S.C. § 2. But he is also responsible as a co-conspirator, *see United States v. Monroe*, 73 F.3d 129, 132 (7th Cir.1995), as the court properly instructed the jury that Trenton could be held responsible for Hill's actions, *see United States v. Stott*, 245 F.3d 890, 908 (7th Cir.2001). Moreover, in this instance conspiracy to possess crack may be used as the predicate offense to the firearm conviction. Because *simple* possession of crack cocaine under § 844(a) is a misdemeanor, *United States v. Smith*, 34 F.3d 514, 518 (7th Cir.1994), it cannot serve as the underlying predicate offense for a § 924(c)(1) conviction. *See* 18 U.S.C. § 924(c)(2) ("drug trafficking crime" means any *felony* punishable under the Controlled Substances Act, 21 U.S.C. § 801 et seq.); 18 U.S.C. § 3559(a) (crime is "felony" if the maximum penalty exceeds one year). But Trenton had two prior felony drug convictions, rendering the underlying § 844(a) offense a felony. *See United States v. Bissonette*, 281 F.3d 645 (7th Cir.2002) (in applying career offender provision of sentencing guidelines, statutory enhancements must be considered in evaluating whether a crime is a felony or a misdemeanor); *United States v. Irby*, 240 F.3d 597, 599–600 (7th Cir.2001) (defendant with four prior drug convictions who possessed marijuana under § 844(a) committed a felony warranting an upward adjustment under U.S.S.G. § 2K2.1(b)(5)).

■ Counsel next examines a number of potential challenges to Trenton's sentences. He first evaluates whether Tren-

ton could lodge a challenge under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because the amount of crack was not charged in the superseding indictment. Under this court's precedent, drug quantity must be specified in the indictment if it affects the statutory maximum. *United States v. Wallace*, 276 F.3d 360, 369 (7th Cir.), *cert. denied*, 536 U.S. 924, 122 S.Ct. 2592, 153 L.Ed.2d 781 (2002). We agree with counsel that a potential *Apprendi* challenge would be frivolous. With regard to the distribution conspiracy, there is no *Apprendi* problem. The district court sentenced Trenton to 293 months on that count, well within the 360–month default statutory maximum for a defendant who, like Trenton, commits a cocaine offense after conviction for another drug felony. *See* 21 U.S.C. § 841(b)(1)(C); *United States v. Arocho*, 305 F.3d 627, 638 n. 4 (7th Cir.2002). But drug quantity *did* alter the statutory maximum for the possession conspiracy; without it, Trenton could not have received more than three years. *See* 21 U.S.C. § 844(a). But this flaw in the indictment was harmless because the statutory maximum is 20 years if the defendant has at least two felony drug convictions and possessed at least one gram of crack. *See id.* Trenton has two felony drug convictions, and dealer Tori James testified that Trenton stole two to three grams of crack from him. Trenton did not dispute this account, negating constitutional concern that the amount of drugs possessed was not proven beyond a reasonable doubt.

Counsel also evaluates other potential challenges to Trenton's sentences, but we agree that these, too, would be frivolous. Counsel considers whether Trenton could pursue a nonfrivolous claim that the district court erred by imposing a two-level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1. The court

found that Trenton provided materially false information by asserting a false alibi, *see id.*, comment. (n.4(f)), a finding supported by the testimony of a witness who directly contradicted Trenton's account.

Counsel also looks at whether Trenton could contend nonfrivolously that the district court assigned too much crack as relevant conduct under the sentencing guidelines, and that as a result his prison sentences are too severe. In determining a drug offender's base offense level, sentencing courts consider quantities of drugs that are not specified in the count of conviction but were part of the same course of conduct or common scheme or plan as the offense of conviction. *See* U.S.S.G. § 1B1.3(a)(2); *United States v. Huerta*, 239 F.3d 865, 875 (7th Cir.2001). We review the district court's drug-quantity calculation deferentially, only for clear error. *Huerta*, 239 F.3d at 875. In calculating the quantity of drugs attributable to a defendant, sentencing courts may consider a wide range of information so long as it bears "sufficient indicia of reliability to support its probable accuracy." *United States v. Taylor*, 72 F.3d 533, 543 (7th Cir.1995).

■ At sentencing the district court held Trenton responsible for approximately 86 grams of crack, but only 50 were needed to qualify him for his assigned offense level of 32. The court credited the testimony of several witnesses who testified about different events, including Timothy Wilson, who testified that Trenton admitted to buying 3.5 grams in Charleston, Missouri, for the purpose of selling it; Norfleet, who stated that Trenton bought 14 grams from him; Chuck Perdiman, who testified that Trenton admitted to buying 14 grams in Wilson City, Missouri; and Mychal Washington, who said that he observed Trenton cut over 28 grams. In light of this testimony, which establishes

well over 50 grams, we agree with counsel that any challenge to the court's drug quantity calculation would be frivolous. *See United States v. Blalock*, 321 F.3d 686, 690 (7th Cir.2003) (court did not clearly err by relying on witness testimony in calculating drug-quantity).

Counsel then examines whether Trenton could lodge a nonfrivolous challenge to the district court's denial of his post-trial request for substitution of counsel. We would review the court's ruling for abuse of discretion because Trenton was able to appraise the court of his specific grievances. *See United States v. Zillges*, 978 F.2d 369, 371–72 (7th Cir.1992). In evaluating whether the court abused its discretion, we would consider the timeliness of the request, the adequacy of the court's inquiry, and the likelihood that the problems between the defendant and counsel were so great that they resulted in a total lack of communication preventing an adequate defense. *United States v. Huston*, 280 F.3d 1164, 1167 (7th Cir.2002). We agree that a challenge on this ground would be frivolous. Although the court did not conduct a hearing on Trenton's motion, it didn't have to–Trenton complained of specific errors at trial of which the court was well familiar. *See Zillges*, 978 F.2d at 371; *United States v. Seale*, 461 F.2d 345, 359 (7th Cir.1972) ("[I]f the reasons are made known to the court, the court may rule without more.") (quotations and citations omitted). And even though Trenton was unhappy with his attorney's performance at trial, he did not assert any sort of communication breakdown that would have warranted relief. *See Huston*, 280 F.3d at 1168.

Lastly, in a related issue counsel evaluates whether Trenton could assert that he received ineffective assistance of counsel. But as counsel correctly notes, the record contains no evidence that Trenton's ap-

pointed counsel provided inadequate representation. And if there is evidence outside of the record supporting such a claim, Trenton would need to present the argument in a collateral proceeding where the record can be more fully developed. *See United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2002).

Counsel examines several other potential issues that we agree would be frivolous, and they do not warrant discussion. Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.