# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1989

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DUANE L. MILLER, JR.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 03-99-CR-02-H/F—**David F. Hamilton**, *Judge.*

_____

ARGUED FEBRUARY 23, 2005—DECIDED APRIL 20, 2005

_____

Before CUDAHY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* After an undercover sting operation involving numerous purchases of the drug Ecstasy, the Marion County Sheriff's Department arrested Duane Miller and an accomplice during a buy-bust operation. Miller was indicted for one count of conspiracy to distribute Ecstasy and two counts of distribution, and was convicted by a jury of conspiracy and one count of distribution. Miller appeals his conviction on four grounds, contending that there is insufficient evidence to support his convictions, that the district court abused its discretion by not allowing him

to explain his request for new counsel before denying that request, that the district court's enhancement for obstruction of justice violated his Sixth Amendment rights under *United States v. Booker*, 125 S.Ct. 738 (2005) and that the district court erred by not considering him for a reduction for his minor role in the offense. Though we find that there was sufficient evidence to support Miller's convictions and that the district court did not abuse its discretion in denying his request for new counsel, we remand to the district court for a determination whether Miller should receive a role in the offense reduction.

## I.

The facts of this case may be summarized as follows. After receiving a tip, Marion County Sheriff's Department Detective Brian Mahone learned that Patrick Holman was a "street source" of Ecstasy in Indianapolis, and that he could be reached at a certain cellular telephone number. Detective Mahone purchased 10 Ecstasy pills from Holman on April 28, 2003, and purchased 100 pills on May 1, when Holman was driven to the buy location by Miller. On May 5, Detective Mahone called Holman to arrange a third purchase of 1,000 pills for $8.00 per pill; Holman replied that he would have to check and called Mahone moments later to tell him that the price would be $8.50 per pill. Holman then received an incoming call from Miller's home telephone, and told Mahone that he would have to take a call from his "cousin." When he came back on the line to Detective Mahone, Holman informed the detective that "he" had set the price at $8.50. On May 8, Detective Mahone again called Holman to arrange the buy; Holman told Mahone that his "cousin" had increased the price to $9.00 per pill. Eventually, the buy was set for May 9, 2003. Shortly after Detective Mahone and another undercover detective came to the buy location, Holman and Miller arrived in separate cars. Holman

entered Detective Mahone's car, took the purchase money and then told the detective to call his "cousin" at Holman's cellular number. Detective Mahone did so and handed his cell phone to Holman who said, "Hey, it's cool." After Holman hung up, Miller left his car and handed Detective Mahone a bag containing 1,000 Ecstasy pills. Detective Mahone told Miller that he would put the pills under his car seat; Miller responded, "You already know, a safety, a safety precaution." Detective Mahone then told Miller that he enjoyed "dealing with PJ [Holman]" because he was "on time." Detective Mahone continued to purchase Ecstasy from Holman until Miller and Holman were apprehended in a buy-bust operation on June 10, 2003.

In June of 2003, Miller was indicted for one count of conspiracy to possess with intent to distribute Ecstasy (Count 1) and two counts of distribution of Ecstasy (Counts 3 and 4, for transactions in May of 2003), in violation of 21 U.S.C. § 841(a)(1). The district court appointed counsel for Miller, and his jury trial was scheduled for mid-August, 2003. Thereafter, Miller requested and was granted three continuances, postponing his trial until January 12, 2004. On January 9, 2004, the last business day before trial, Miller retained his own attorney, who filed a conditional appearance and requested a fourth continuance at 4:07 p.m. On the morning of trial, the district court held a brief hearing on the continuance, but spoke only to Miller's court-appointed counsel and the attorney he had retained. Miller's court-appointed counsel said that Miller had missed an appointment the previous Friday, and asked the district court to consider other factors in an *ex parte* hearing. The district court then denied Miller's request, finding that there had not been a lack of communication between Miller and his appointed counsel, and that the request was untimely. After denying the request, the district court provided Miller's court-appointed counsel an opportunity to supplement the record during an *ex parte* proceeding, in which

that counsel discussed the impact of Miller's missed appointment upon his trial preparation. The district court then asked Miller if he wanted to address the issue, and Miller stated only that he had missed the appointment to meet with the attorney he had retained. He cited no reasons for requesting new counsel and stated that he had communicated well with his appointed attorney.

Miller testified at trial and admitted that he had delivered a bag to Mahone on May 9, 2003, but claimed to be unaware that the bag contained Ecstasy. On January 13, 2004, the jury convicted Miller of the conspiracy charge and of one count of distribution. At sentencing, the district court held Miller accountable only for the Ecstasy pills distributed in the May 1, 2003 buy, and not for additional Ecstasy pills distributed during the course of the conspiracy. Rejecting Miller's argument that he should receive a two-level reduction for his allegedly minor role in the offense, the district court applied a two-level enhancement for obstruction of justice, finding by a preponderance of the evidence that Miller had lied when he claimed not to know that there were Ecstasy pills in the bag he delivered to Detective Mahone. Miller was then sentenced to 70 months' imprisonment on Counts 1 and 4, to run concurrently.

## II.

On appeal, Miller contends that there is insufficient evidence to support his convictions, that the district court abused its discretion by not allowing him to explain his request for new counsel before denying that request, that the district court's enhancement for obstruction of justice violates his Sixth Amendment rights since it was based on facts not found by a jury or admitted to by the defendant and that the district court erred by not considering him for a reduction for his minor role in the offense.

## A.

We first address Miller's insufficient evidence claim. Miller concedes that he drove Holman to one buy and handed a bag to Detective Mahone at another, and that he complimented Detective Mahone for taking a "safety precaution" by concealing the bag. At trial, however, Miller denied that he knew the bag contained a controlled substance, and asserts on appeal that there is merely a probable inference that he was aware of the bag's contents, and not proof beyond a reasonable doubt. Miller also emphasizes that he never received any of the purchase monies, was never present when money was discussed or exchanged, was never named in connection with Holman and that a search of his apartment revealed no evidence linking him to the transactions.

A conspiracy conviction requires a showing that two or more people joined together for the purpose of committing a criminal act and that the charged party knew of and intended to join the enterprise. *United States v. Atkins*, 274 F.3d 444, 450 (7th Cir. 2001). The government may establish these elements through "circumstantial evidence and the reasonable inferences therein concerning the parties' relationships, their overt acts, and their overall conduct." *United States v. Navarrette*, 125 F.3d 559, 562 (7th Cir. 1997). A defendant has joined a conspiracy if "his presence, along with other evidence indicating that the presence or act was intended to advance the ends of the conspiracy is shown." *Id.* at 662 (internal quotation marks omitted). Finally, when attempting to prove a drug conspiracy, the government cannot merely show that the defendant was a participant in a buyer-seller relationship, but must "prove that the defendant conspired to commit some crime beyond *that* agreement to sell drugs." *United States v. Rock*, 370 F.3d 712, 714 (7th Cir. 2004) (emphasis in original). Because Miller did not file a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure,

we review this insufficient evidence claim for plain error, and consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal citations omitted).

Here, the government has met its burden of proof. Holman's telephone records establish that Miller was the person Holman referred to as his "cousin," who set the prices for Ecstasy, which Holman quoted to Mahone. Moreover, Miller admits to engaging in overt acts in furtherance of the conspiracy, such as driving Holman to the first buy, handing a bag to Mahone during the second buy and complimenting Detective Mahone on his concealment of the bag. The evidence also indicates that Miller delivered the bag to Detective Mahone only after Holman told him that it was "cool," and that Miller received a compliment on Holman's professionalism. These facts establish that Miller and Holman were not only on the same side of the transaction, but that Miller participated actively in the Ecstasy sales, was concerned about payment by third-party purchasers and maintained control of the transactions by setting prices and delaying delivery until he was assured that his accomplice had been paid. Viewing this evidence in the light most favorable to the prosecution, a reasonable jury was entitled to find beyond a reasonable doubt that Miller conspired to distribute Ecstasy, and so Miller cannot prevail on his insufficiency of the evidence claim with respect to his conspiracy conviction.

There is also sufficient evidence to support Miller's conviction for distribution of Ecstasy. To succeed on this count, the government had to establish "1) knowing or intentional possession of the drug, 2) possession with intent to distribute and 3) knowledge that the drug was a controlled substance." *United States v. Harris*, 325 F.3d 865, 868 (7th Cir. 2003). Miller was convicted of distributing Ecstasy on May 9, 2003, when he delivered the bag of Ecstasy pills to

Detective Mahone. Based on Miller's admissions that he delivered a bag to Detective Mahone, and that he complimented Detective Mahone for taking a "safety precaution," as well as other evidence in the record, a reasonable jury could have found that Miller actually possessed Ecstasy, and that Miller knew that the bag he delivered to Detective Mahone contained Ecstasy.

### B.

Miller also argues on appeal that the district court abused its discretion by not allowing him to explain why he sought a change of counsel before denying his request for new counsel, thus meriting a new trial. In refusing to grant Miller a fourth continuance, the district court relied upon factors enunciated in *United States v. Huston*, 280 F.3d 1164 (2002). Under *Huston*, in determining whether a district court abused its discretion in denying a defendant's request for new counsel, we consider the timeliness of the request, the adequacy of the district court's inquiry into the requests and whether the conflict between the defendant and his counsel was so great that it resulted in a complete lack of communication and in an inability to present an adequate defense. *Id.* at 1167. Miller contends that the *Huston* criteria are inapplicable since the district court never allowed him to explain his reasons for requesting new counsel. Though Miller was not questioned by the district court as to his reasons for seeking to change counsel, it did engage in an colloquy with Miller *after* it denied the request. Thus, we find that the *Huston* criteria appear to be applicable since Miller had an opportunity to express his concerns to the district court.

Miller's request is clearly deficient on two of the three *Huston* criteria. There can be no doubt that his request was untimely, since Miller's retained attorney filed a request for continuance and a conditional appearance at 4:07 p.m. on

the Friday before Miller's trial was to commence, requiring that the hearing on this motion be held the morning of the trial, when jury selection was due to begin. The lateness of this request is especially significant since Miller had enjoyed ample time to retain counsel earlier, having already received three continuances. Thus, Miller's request came too late in the game. *See Huston*, 280 F.3d at 1167 (request for new counsel on morning of trial untimely). In addition, Miller did not inform the district court that he had a difficult relationship with his appointed counsel or that there was a lack of communication between them, and the record does not reflect an inability to present an effective defense.

As to the remaining *Huston* factor, the district court's inquiry into Miller's request would have been more appropriate if it had solicited Miller's reasons before rather than after denying the request. However, we cannot say that this deficiency gave rise to an abuse of discretion, since Miller had not indicated that he was dissatisfied with his court-appointed counsel. *See United States v. Seale*, 461 F.2d 345, 359 (7th Cir. 1972) (holding that, where the district court was put on notice that the defendant was dissatisfied with all counsel but one who was hospitalized, and the defendant had relieved all other attorneys and decided to represent himself *pro se* in the absence of the hospitalized counsel, the district court was under an obligation to inquire into the subject, and its failure to do so constituted an abuse of discretion). In any event, the district court's decision to deny the request for new counsel was not a denial of Miller's Sixth Amendment right to effective assistance of counsel. *Huston*, 280 F.3d at 1166 (citation omitted). There is no evidence of ineffective representation by court-appointed counsel. The district court did not abuse its discretion in denying Miller's request for new counsel without ascertaining his reasons for this request.

## C.

We next address Miller's contention that the district court erred in refusing to reduce his offense level based on his alleged minor role in the conspiracy.

Under § 3B1.2 of the U.S. Sentencing Guidelines, a defendant's offense level is decreased by two levels if he was a minor participant in any criminal activity. This issue does not present a question under *United States v. Booker*, 125 S.Ct. 738 (2005), since a role in the offense adjustment would reduce Miller's sentence, not enhance it. We review the district court's decision to deny a defendant a downward adjustment for a minor role in an offense for clear error. *United States v. Hanhardt*, 361 F.3d 382, 394 (7th Cir. 2004).

Here, the record indicates that the district court erred when it expressed a belief that Miller was not qualified to receive the reduction since he was being held accountable only for the quantity of drugs attributable to his own conduct. Thus, in denying Miller's request, the district court stated that "there is no basis for a minor role adjustment in that distribution and delivery. There would be room to make that argument if I were holding Mr. Miller accountable for additional quantities of drugs." (Sent. Tr. 9). But in *United States v. Rodriguez-Cardenas*, 362 F.3d 958 (7th Cir. 2004), we held that, under a 2001 amendment to the sentencing guidelines, it was error for a district court to fail to consider a defendant for a role in the offense reduction merely because he was held accountable only for the drugs he personally handled. *Id.* at 958. Of course, Miller's act of handing over the drugs might have been an adequate reason to find that he did not have a minor role, but the trial judge did not expressly rely on this circumstance. Thus, we must remand this issue to the district court for a determination whether Miller may receive a reduction for a minor role in the offense under § 3B1.2 of the U.S. Sentencing Guidelines.

## D.

Miller also argued on appeal that his Sixth Amendment right to a jury determination of facts underlying sentence enhancements was violated when the judge found by a preponderance of the evidence that he had testified falsely at trial, and applied a 2-level enhancement for obstruction of justice, raising his offense level from 24 to 26. *See United States v. Booker*, *supra*. At trial, Miller testified that he did not know that the bag he delivered to Detective Mahone contained Ecstasy. On appeal, Miller concedes that the jury verdict of conviction contradicts his trial testimony, but contends that the verdict relates only to the charged offenses, and cannot be the basis of the obstruction of justice enhancement. We are already remanding this case for a determination as to whether Miller qualifies for a reduction for his alleged minor role in the offense, and Miller may be resentenced in accordance with *Booker* at that time, obviating the need for a limited remand under *United States v. Paladino*, No. 03-2296, 2005 WL 435430 (7th Cir. Feb. 25, 2005).[1]

---

[1] To indicate our resolution of issues presented on the present appeal, however, we would note that the district court did not clearly err in finding that Miller perjured himself by testifying that he did not know that the bag he delivered to Detective Mahone contained Ecstasy, since it could have refused to credit Miller's testimony in light of his admissions. Moreover, both the offenses of conspiracy and distribution incorporate a *scienter* element that Miller's testimony was intended to negate, and the jury's verdict directly establishes that it disbelieved his testimony, since it was required to find *scienter* in order to convict Miller. Under *Booker*, therefore, it could certainly be argued that there was no constitutional error in applying the enhancement for obstruction of justice because the jury by its verdict established that perjury had been committed. *Cf. United States v. Parra*, No. 03-2056, 2005 WL 703936 (7th Cir. March 29, 2005). In any event, there was a statutory error since the district court, in applying the
(continued...)

### III.

In summary, we AFFIRM Miller's conviction and the district court's denial of Miller's request for a continuance. We REMAND this case to the district court for resentencing to allow it to determine whether, under the circumstances presented and under *United States v. Rodriguez-Cardenas*, Miller merits a reduction for an allegedly minor role in the offense.

A true Copy:

Teste:

_____
**Clerk of the United States Court of Appeals for the Seventh Circuit**

---

[1] (...continued)
enhancement, erroneously believed that the Guideline was mandatory, not advisory. Although no objection was raised at trial, the government has conceded that the application of the assessment was error, whether constitutional or statutory. (But the context of the government concession indicated that it applied to the constitutional question). (Plaintiff's Supp. Br. at 5) ("In light of the decision in *Booker*, it is clear that the district court's belief that it was required to impose the Guidelines sentence was erroneous and that error was 'plain' (in the sense of 'clear' or 'obvious' ")) (citation omitted). This concession would have mooted the first two prongs of the plain error analysis by which we would have resolved this matter. *See United States v. Nance*, 236 F.3d 920, 924 (7th Cir. 2000) (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

---