NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 8, 2007
Decided March 12, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-2850

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  *Plaintiff-Appellee*, | Appeal from the United States<br>District Court for the Southern<br>District of Illinois |
| *v.* | |
| | No. 4:05CR40028-001-JPG |
| RUBEN ARROYO<br>  *Defendant-Appellant*. | J. Phil Gilbert,<br>*Judge*. |

## O R D E R

Ruben Arroyo, with the help of several others, distributed various drugs throughout southern Illinois. Following an investigation into their activities, Arroyo and four co-defendants were charged with distributing and conspiring to distribute cocaine base, cocaine, and methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. Arroyo pleaded guilty to all six counts in which he was named, but now appeals. His newly appointed appellate lawyers seek to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because they are unable to discern a nonfrivolous issue to pursue. We agree, and thus grant counsels' motion to withdraw and dismiss this appeal.

The district court appointed a lawyer for Arroyo, but initially he expressed displeasure with counsel's advocacy and moved for substitute counsel. At a hearing on this motion, Arroyo informed the court that he was trying to hire his own lawyer, and the court allowed him an additional week to secure representation but denied the motion for new counsel. Two weeks later Arroyo told the court that he was fully satisfied with his appointed lawyer's representation and pleaded guilty without a plea bargain. After ensuring that Arroyo's pleas were voluntary, the court accepted them.

Before sentencing the probation officer estimated that Arroyo's distribution network had sold the equivalent of more than 30,000 kilograms of marijuana. Not only did his four co-defendants run drugs for Arroyo, but Arroyo also used two minors to distribute drugs. He also owned an assault rifle that he kept at his residence where the drugs were stored and sold. Additionally, the probation officer documented Arroyo's two convictions for driving an uninsured vehicle, each of which resulted in a sentence of one year of court supervision. At sentencing one of Arroyo's co-defendants testified that he helped Arroyo buy the rifle and frequently saw Arroyo carry it at his residence. A minor also testified that she sold drugs supplied to her by Arroyo and saw the rifle when she received the drugs from him. Based on this evidence, the district court concluded that Arroyo's guidelines imprisonment range was 360 months to life and sentenced him to a total of 420 months.

Counsel's supporting brief is facially adequate, and Arroyo has responded to our invitation under Circuit Rule 51(b) to comment on counsel's submission. We limit our review to the potential issues identified in counsel's brief and Arroyo's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Counsel first considers whether Arroyo could argue that the district court abused its discretion in denying his request for substitute counsel. Ordinarily, in deciding whether the district court abused its discretion, we would consider—among other factors—whether the tension between Arroyo and counsel was so great that it resulted in a total lack of communication preventing an adequate defense. *See United States v. Huston*, 280 F.3d 1164, 1167 (7th Cir. 2002). But in this instance Arroyo effectively abandoned any concern about appointed counsel's continued representation. During the change-of-plea hearing, Arroyo stated that he reviewed his indictment and the guidelines with counsel and that he was fully satisfied with counsel's representation and advice. Since Arroyo admitted his satisfaction with the communication between him and counsel, we agree that any challenge to the district court's denial of Arroyo's motion for substitute counsel would be frivolous. *See United States v. Bjorkman*, 270 F.3d 482, 501 (7th Cir. 2001) (concluding that defendant's admission during plea hearing that he was satisfied with counsel's representation demonstrates adequate communication

between counsel and defendant); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (presuming truthfulness of statements made during change-of-plea hearing).

Counsel next considers whether Arroyo could argue that his guilty pleas must be set aside as involuntary. This potential issue is properly considered because counsel has verified that Arroyo wants his pleas set aside. *See United States v. Knox*, 287 F.3d 667, 671 (7th Cir. 2002). But any challenge based on purported noncompliance with Federal Rule of Criminal Procedure 11 would be reviewed for plain error because Arroyo did not move to withdraw his pleas in the district court. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Villarreal-Tamayo*, 467 F.3d 630, 632 (7th Cir. 2006).

We agree with counsel that such a challenge would be frivolous. The district court informed Arroyo of his right to plead not guilty and explained the charges, possible penalties, and the rights Arroyo would give up by pleading guilty. The court also confirmed that there was an adequate factual basis for Arroyo's pleas and ensured that he was not pleading under perceived pressure or coercion. According to counsel, Arroyo wants out of his guilty pleas because he is dissatisfied with his sentence, but a guilty plea is no less voluntary just because the defendant becomes disgruntled about the outcome at sentencing. *See United States v. Jones*, 381 F.3d 615, 619 (7th Cir. 2004).

Both counsel and Arroyo question whether Arroyo might argue that the district court improperly added points to his criminal history score based on two convictions for driving an uninsured vehicle. In Arroyo's view, driving an uninsured vehicle is similar to a "minor traffic infraction" and thus should not be counted. *See* U.S.S.G. § 4A1.2(c)(2). But we have held otherwise, concluding that the violation is more akin to driving without a license and, like that offense, yields one criminal history point if the sentence was at least one year of probation. *United States v. Boyd*, 146 F.3d 499, 501-02 (7th Cir. 1998); *see* U.S.S.G. § 4A1.2(c)(1). Arroyo each time was sentenced to one year of "court supervision," but the nomenclature makes no difference; we have held that court supervision "is equivalent" to probation for purposes of § 4A1.2(c)(1). *Boyd*, 146 F.3d at 502; *see United States v. Jones*, 448 F.3d 958, 960 (7th Cir. 2006). In any event, even if the court ignored these convictions, Arroyo's guidelines range would not have changed; at a total offense level of 42, the imprisonment range remains 360 months to life even in the lowest criminal history category. *See* U.S.S.G. § 5A. Accordingly, the potential argument is frivolous.

After reviewing the district court's remaining guidelines calculations, counsel could identify no potential issues for appeal. However, Arroyo, in his Rule 51(b) response, proposes to argue that the district court miscalculated the drug quantity.

Arroyo thinks the court set the drug amount at more than 30,000 kilograms of *cocaine*, but in fact, the court found that the various drugs dealt by Arroyo were *equivalent* to over 30,000 kilograms of *marijuana*. *See* U.S.S.G. § 2D1.1 cmt. nn.6, 10. Arroyo admitted at his change-of-plea hearing that the conspiracy involved well over 50 grams of crack, and that just two of the distribution counts, which stemmed from controlled buys, involved over 150 grams of crack and over 160 grams of pure methamphetamine. These admissions alone triggered a possible life sentence by statute. *See* 21 U.S.C. §§ 841(b)(1)(A)(iii), (viii); *United States v. Castillo*, 406 F.3d 806, 822-23 (7th Cir. 2005). Thus, as Arroyo acknowledges, the government needed to prove the drug quantity only by a preponderance of the evidence. *See McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005). Arroyo's admissions regarding the 10-month conspiracy, along with the presentence investigation report and witness testimony support the quantity calculation, and Arroyo's contention that there is "no basis to support" this calculation is without merit. *See United States v. Krankel*, 164 F.3d 1046, 1054-55 (7th Cir. 1998).

Finally, Arroyo would argue that it was for a jury, not the sentencing court, to decide whether he played a leadership role in the conspiracy, *see* U.S.S.G. § 3B1.1(b), and possessed an assault rifle, *see id.* § 2D1.1(b)(1). It is settled, though, that the court makes such findings for purposes of determining the guidelines range. *See, e.g., United States v. Booker*, 543 U.S. 220, 245-46 (2005)*; United States v. Hale*, 448 F.3d 971, 988-89 (7th Cir. 2006); *United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006). Moreover, these increases were supported by ample evidence in the form of witness testimony and the presentence report. During the plea colloquy, Arroyo admitted that he directed others involved in the conspiracy to transport large quantities of drugs from Chicago to southern Illinois so that he could re-distribute and sell the drugs through his network. The government demonstrated that the rifle was discovered at Arroyo's residence where he stored and sold drugs, and Arroyo points to no evidence to the contrary. *See* U.S.S.G. § 2D1.1(b)(1), cmt. n.3 (explaining that firearm adjustment applies if "the weapon was present, unless it is clearly improbable that the weapon was connected with the offense); *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000) (noting that firearm adjustment applies if defendant possessed firearm "in the course of the conspiracy"). This evidence supports the increases in his offense level, and any argument to the contrary would be frivolous.

Counsel's motion to withdraw is GRANTED and the appeal is DISMISSED. Arroyo's motion for substitute counsel is DENIED.